IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JACQUELINE B.,

        **Plaintiff,**

v.                          Civil Action 2:25–cv–00295
                              Judge James L. Graham
                              Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF
SOCIAL SECURITY,

        **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Jacqueline B., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). The Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 8) and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff filed her application for DIB on October 6, 2021, alleging disability beginning March 23, 2021, due to depression, anxiety, migraines, back pain, incisional hernia, shoulder surgeries, and polycystic ovarian syndrome. (R. at 207–13, 263). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephonic hearing on January 17, 2024. (R. at 62–89). Ultimately, the ALJ denied Plaintiff's applications in a written decision on February 5, 2024. (R. at 39–61). The Appeals Council denied Plaintiff's request for review, making the ALJ's ruling the Commissioner's final decision. (R. at 1–7).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on March 24, 2025. (Doc. 1). As required, the Commissioner filed the administrative record, and the matter has been fully briefed. (Docs. 7, 8, 9). The matter is ripe for review.

A. **Relevant Hearing Testimony and Statements to the Agency**

The ALJ summarized Plaintiff's testimony from the administrative hearing and statements to the agency as follows:

> [Plaintiff] alleges disability due to depression, anxiety, hernias, PCOS, migraines, and obesity (Exhibits 1E, 3E). In a function report, [Plaintiff] alleged severe depression. She did not want to take care of herself. She had belly and back pain that limited physical abilities and worsened depression. She required reminders or encouragement to shower and complete housework. She reported limited socializing and described herself as "not pleasant to be around." She could lift up to 10 pounds comfortably. She had difficulty completing tasks and getting along with others. She did not handle stress well (Exhibit 6E). At the hearing, [Plaintiff] testified that she had frequent migraines, three to four times per week. She testified that she was sensitive to light and had nausea and vomiting during migraines. She endorsed problems with anger and variable moods with no known triggers. She testified that she has panic attacks three to four times per week. She testified that she had low motivation and struggled to get out of bed five days per week. She had problems concentrating. [Plaintiff] testified that she struggled to complete tasks. She required encouragement or reminders to do chores. She had difficulty being around others. She stayed home and tried not to interact with others in public. She had problems with people telling her want to do. She lacked motivation for hygiene. She endorsed feeling tired all day. She testified that she did not handle stress well. She becomes moody and lashes out at others. She testified that she could lift 50 pounds or less. She testified that she needed some help with childcare on occasion. She had poor energy.

(R. at 49–50).

B. **Relevant Medical Evidence**

The ALJ discussed Plaintiff's medical records and symptoms related to her mental impairments as follows:

> Records before [Plaintiff]'s alleged onset date through 2020 reflect migraine headaches and depression. She received routine medication management for both. She worked late nights delivering cookies. [Plaintiff] later endorsed anxiety with panic attacks. She complained of dizziness as a side effect of antianxiety medication. She had chest pain that was attributed to anxiety and costochondritis.

(R. at 50).

> Mentally, as noted above, in 2020 [Plaintiff] complained of depression, anxiety, and panic attacks. She received routine medication management for symptoms. In

January 2021, [Plaintiff] denied improvement in symptoms with medication. She appeared sad and tearful with impaired judgment but also cooperative, calm, and well groomed. Her medications were adjusted (Exhibit 2F). Counseling records in March and June indicate diagnosis of mild major depressive disorder (Exhibit 14F). During the relevant period, [Plaintiff] received medication management primarily through her primary care provider. Her treatment was largely conservative with routine medications for depression and anxiety. Her medications are adjusted at times to address breakthrough symptoms, such as increased dosage. Through 2021, [Plaintiff] received medication for anxiety and depression with mood swings. She consistently appeared cooperative, calm, and happy. Overall, [Plaintiff]'s anxiety and depression improved (Exhibits 2F, 8F). She often exhibited normal mood, affect, and judgment (Exhibit 8F, 10F). In February 2022, [Plaintiff]'s depression was well controlled with medication and noted to be mild despite emotional lability (Exhibit 8F). Three months later, [Plaintiff] reported depression, anxiety, fatigue, poor sleep, and stress at home, but counseling and medications helped. (Exhibit 10F).

During this period, [Plaintiff] also underwent a consultative examination in April 2022 performed by Dr. Twehues. During the assessment, [Plaintiff] endorsed disability due to depression, anxiety, and physical health problems. She endorsed symptoms consistent with major depressive disorder, recurrent, moderate, with anxious distress. She was reportedly fired from work because of frequent absences due to depression and after hernia surgery. She described an inconsistent work history. She appeared agitated during the interview, especially towards her children while they "ran around in the background." She was nonetheless pleasant and cooperative. Her hygiene appeared good despite her claim that she showered once or twice per week. Her energy appeared good. She was tearful but maintained good eye contact. Her intellectual abilities fell within normal limits and judgment appeared intact. She complained of difficulties with focus and distractibility, but was able to follow simple instructions, track the conversation, and did not appear easily distracted. Her daily activities were somewhat limited, but was able to complete housework, care for her kids, and drive. She played video games. She had a few panic attacks in the past, but none in recent months (Exhibit 9F).

When [Plaintiff] reported difficulty focusing, anxiety, and depression in early 2023, she also described stress at home (Exhibit 10F). Other notes at this time reflect improvement in anxiety and depression (Exhibit 14F/151). In June, [Plaintiff] told her primary care provider that she was diagnosed with severe depression and ADD, but the evidentiary record does not reflect this.

[Plaintiff] also reported only intermittent counseling at that time. Although the assessment noted severe depression, her mood and affect were normal on exam (Exhibit 10F).

From 2021 through 2023, [Plaintiff] also underwent mental health counseling. These records reflect variable moods, with increased symptoms in the setting of

3

> significant stressors. [Plaintiff] often complained of increased symptoms due to stress at home due to marital discord and difficulty dealing with her children's behavior problems. She had several physical and verbal altercations with her husband with child protective services involved. Her symptoms waxed and waned, but generally [Plaintiff] made progress with medication and counseling; her mental health symptoms and function improved (Exhibit 14F). She often appeared in good spirits (see e.g., Exhibit 14F/251, 658, 683, 696, 757, 810, 103). [Plaintiff] met with her counselor at the park to walk weather permitting (Exhibit 14F/683, 671, 696). She enjoyed playing video games (Exhibit 14F/810, 283, 733). She went to Lake Erie with her children and mother in June 2021 (Exhibit 14F/776). She lacked motivation for personal care and household chores (Exhibit 14F/799). [Plaintiff] appeared pleasant, cooperative, conversant, and euthymic during a mental status exam around the same time. She performed activities of daily living without difficulty (Exhibit 14F/794). She was able to remain calm and controlled her emotions during an argument with her husband (Exhibit 14F/874). Her depression was well controlled in February 2022. She traveled to Maryland for a funeral. She appeared in better spirits (Exhibit 14F/251, 270; 8F/15). She was doing well in March (Exhibit 15F/283). Although she had exacerbation in symptoms late 2022, [Plaintiff] acknowledged that medications helped (Exhibit 14F/603, 615, 620). She was not as depressed or anxious with counseling and medications notwithstanding some irritation (Exhibit 14F/127). Although [Plaintiff] told her primary care provider that she was tired all the time, at a lot of fast food, had difficulty focusing, and endorsed depression and anxiety in March 2023, counseling notes show improved symptoms with a 30-pound weight loss (Exhibit 14F/151, 10F). When [Plaintiff] was in a car accident in April, she showed improvement in her mood by being thankful she was okay (Exhibit 14F/164). She was also able to effectively communicate with her husband, practice positive self-talk, showed resiliency and motivation by seeking solutions during a difficult time (Exhibit 14F/158, 170). She felt anxious sometimes but made progress overall. She felt well and went out and about with her family (Exhibit 14F/175, 179).

(R. at 51–52).

> Mentally, [Plaintiff] also showed improved moods and progress with conservative treatment, including medication management and counseling. Her mental status exams are consistent with anxiety and depression, but otherwise largely intact (see Exhibits 2F, 8F, 9F, 10F, 14F). [Plaintiff]'s activities of daily living are somewhat limited due to lack of motivation; however, she was able to do some household chores, drive, prepare dinner, travel, and play video games (see e.g., Exhibits 9F, 14F/799, 745, 251, 283, 733, 810, 776, 270). She appears well groomed (Exhibit 2F, 9F).

(R. at 53).

4

### C. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements through September 30, 2025, and she had not engaged in substantial gainful activity since March 23, 2021, the alleged onset date. (R. at 44). The ALJ also determined that Plaintiff has the following severe impairments: obesity, diabetes, migraine headaches, hypertension, incarcerated ventral hernia status-post repair, polycystic ovarian syndrome (PCOS), major depressive disorder with anxious distress. (*Id.*). Still, the ALJ found that none of Plaintiff's impairments, either singly or in combination, meets or medically equals a listed impairment. (R. at 45).

The ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance as that term is defined in the *Dictionary of Occupational Titles*. She can occasionally stoop, kneel, crouch and crawl. She would need to avoid exposure to all hazards, including commercial driving, operating hazardous machinery, and unprotected heights. She can understand, remember and carry out simple instructions. She cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas. She can tolerate occasional interaction with coworkers and supervisors. She can have no interaction with the public. She can deal with occasional changes in a routine work setting. She must avoid exposure to bright lights such as direct sunlight.

(R. at 48–49).

The ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are "inconsistent because [Plaintiff]'s treatment for chronic conditions has been largely conservative in nature. Treatment has been effective in alleviating both physical and mental symptoms." (R. at 52).

The ALJ determined that Plaintiff is unable to perform her past relevant work as an office helper or nurse assistant. (R. at 55). Relying on the vocational expert's ("VE") testimony, the ALJ found that, considering her age, education, work experience, and RFC, there are jobs that

5

exist in significant numbers in the national economy that Plaintiff can perform at the light exertional level, such as a marker, router, garment sort, or small parts assembler. (R. at 55–56). Consequently, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from March 23, 2021, through the date of this decision (20 CFR 404.1520(g))." (R. at 56).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff contends that the ALJ erred when evaluating the medical source opinions of consultative psychologist, Jessica Twehues, Psy.D., and the state agency reviewing psychologists,

Janet Souder, Psy.D., and Aracelis Rivera, Psy.D. (Doc. 8 at 8–16). The Commissioner defends the ALJ's evaluations as sufficient under the regulations. (Doc. 9 at 4–15).

This Court looks to the social security regulations to evaluate the ALJ's performance. The regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider the following factors: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2); *see Holston v. Saul*, No. 1:20–CV–1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021) (noting the ALJ's role is to articulate how persuasive she found a medical opinion to be). The Court must affirm if substantial evidence supports the ALJ's decision, even if the Undersigned would have resolved conflicts in the record differently. *See Christine G. v. Comm'r of Soc. Sec.*, No. 2:22-cv-1969, 2023 WL 5717417, at *6 (S.D. Ohio Sept. 5, 2023).

    **A.    Dr. Twehues's Opinion**

In her first assigned error, Plaintiff takes aim at how the ALJ treated the opinion of consultative psychologist Dr. Twehues. (R. at 653–59). In particular, Plaintiff claims the ALJ failed to evaluate Dr. Twehues's opinion for supportability and consistency. (Doc. 8 at 8, 10–11).

Dr. Twehues completed a psychological assessment and mental status exam on April 5, 2022. (R. at 653). Of note, Dr. Twehues concluded that Plaintiff "might have some difficulty with prolonged focus and [become] easily distracted"; that Plaintiff "appeared prone to higher rates of absenteeism"; and that Plaintiff "would have difficulty coping with workplace stress and increased stress would make it difficult to focus and persist on tasks." (R. at 54 (citing R. at 657–58)). Ultimately, the ALJ found Dr. Twehues's opinion was "not fully persuasive" and "overstates the claimant's limitations." (*Id.*). The Undersigned considers whether the ALJ evaluated supportability and consistency when arriving at her conclusion.

    *1.    Supportability*

Plaintiff first argues that the ALJ failed to evaluate Dr. Twehues's opinion for supportability because the ALJ "did not identify any evidence that was . . . unsupportive of Dr. Twehues' opinion." (Doc. 8 at 10). The Undersigned disagrees.

Supportability requires the ALJ to evaluate how much the medical conclusions are supported internally, as well as by other treatment notes and exams by the evaluating physician. 20 CFR 404 § 1520c(c)(1); *Michael R. v. Comm'r of Soc. Sec.*, No. 2:22-CV-4117, 2023 WL 6160626, at *5 (S.D. Ohio Sept. 21, 2023) ("The ALJ properly evaluated the supportability of Ms. Riffle's opinion given the lack of objective evidence in the opinion itself and when compared to Ms. Riffle's past treatment notes."), *report and recommendation adopted*, No. 2:22-CV-4117 WL

8

688754 (S.D. Ohio Feb. 20, 2024); *see also Thomas J. v. Comm'r of Soc. Sec.*, No. 1:24-CV-00048, 2024 WL 3841221, at *10 (S.D. Ohio Aug. 15, 2024). The ALJ did that here.

The ALJ first queried whether the functional assessment portion of the exam fit the doctor's ultimate conclusions. Specifically, the ALJ noted that Dr. Twehues's observation of "only mild to moderate interpersonal conflict, moderate symptoms of depression and anxiety, and no evidence of severe psychopathology" was not supportive of any "disabling mental condition" that would necessitate Dr. Twehues's extreme conclusions. (*Id.* (citing R. at 657–58)). Plus, the ALJ found that in coming to her conclusions, Dr. Twehues "did not offer a specific function-by-function assessment of what the claimant could do despite her impairments." (R. at 54 (citing R. at 657)). In similar circumstances, this Court has found such an analysis to satisfy the supportability component. *Cf. Misty K. v. Comm'r of Soc. Sec.*, No. 2:21-CV-548, 2022 WL 4376229, at *6 (S.D. Ohio Sept. 22, 2022) ("As for supportability, the ALJ is correct in describing Dr. Cooperrider's opinion as vague. Dr. Cooperrider merely asserts that that Plaintiff is legally blind and unable to perform most work activities"); *see also Tonya J. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00757, 2022 WL 4621621, at *4 (S.D. Ohio Sept. 30, 2022) (holding the ALJ conducted a supportability analysis where the medical opinion didn't include specific functional limitations and the ALJ found the opinion was, thus, "vague as to the actual levels of functional ability or limitations.").

The ALJ then observed that Dr. Twehues largely "reiterated [Plaintiff's] . . . self-reported symptoms and limitations." (R. at 54). Essentially, the ALJ found the conclusions less persuasive on the basis they were rooted in Plaintiff's subjective reports as opposed to a clear functional assessment, as mentioned above. (*Id.*). Further, the ALJ didn't find these reiterated self-reports to fit with Dr. Twehues's observations of Plaintiff's behavior during the exam. For example, the

9

ALJ noted that Plaintiff reported symptoms "consistent with major depressive order, recurrent, moderate, with anxious distress," but Dr. Twehues observed Plaintiff "was nonetheless pleasant and cooperative." (R. at 51 (citing R. at 655)). The ALJ also found that despite reporting to Dr. Twehues "difficulties with focus and distractibility," Plaintiff was able "to follow simple instructions, track the conversation, and [to] not appear easily distracted." (*Id.* (citing R. at 655, 657)). *See Michael R.*, 2023 WL 6160626, at \*6 (holding the ALJ evaluated supportability where she noted the opinion lacked reference to objective evidence) ("This type of citation would have provided the ALJ with supportive evidence that each limitation assessed was grounded in objective medical evidence—rather than subjective reports from Plaintiff.").

Nor did the ALJ find Dr. Twehues's conclusions supported by Dr. Twehues's "contemporaneous mental status examination," included in the opinion. (R. at 54 (citing R. at 655–56)). The ALJ characterized the exam results as "fairly normal," and "otherwise intact." (R. at 54). And, earlier in the opinion, the ALJ noted that "Dr. Twehues found normal intellectual abilities based on [Plaintiff's] mental status exam" (R. at 47 (citing R. at 656)); that "[Plaintiff] exhibited intact insight and adequate judgment" (R. at 48 (citing R. at 656)); and that "Dr. Twehues did not diagnose ADD. [Plaintiff] did not document signs of ADD in her mental status exam, summary, or assessment." (R. at 45 (citing R. at 653–58)). The ALJ even contrasted these unremarkable findings with Dr. Twehues's other notes that Plaintiff "appeared agitated, tense, anxious, and yelled at her children as they ran around the house." (R. at 54). Here too, the ALJ analyzed supportability. *Michael R.*, 2023 WL 6160626, at \*5.

Plaintiff argues the ALJ "merely disregarded the opinion because it did not provide a specific function-by-function assessment" and failed to otherwise analyze supportability as required by the regulations. (Doc. 8 at 10 (citing R. at 54)). This is not an accurate appraisal of

10

the ALJ's reasoning. As previously noted, disregarding an opinion because it lacks a clear functional assessment is itself a proper supportability analysis. *Misty K*, 2022 WL 4376229, at *6; *Tonya J.*, 2022 WL 4621621, at *4. But even accepting Plaintiff's contention that it isn't, the ALJ nevertheless offered other inconsistencies within the opinion that rendered it unsupported, as summarized above. In fact, the ALJ did so immediately following her comment on the functional assessment. (R. at 54 (citing R. at 655–56) ("But Dr. Twehues' conclusions are not supported by the contemporaneous mental status examination.")). The ALJ sufficiently analyzed supportability, and Plaintiff's argument otherwise is without merit.

    2. *Consistency*

Plaintiff also asserts that the ALJ failed to evaluate the consistency of Dr. Twehues's opinion. (Doc. 8 at 10). Again, the Undersigned disagrees.

Unlike supportability, which requires the ALJ to compare medical conclusions to the evidence offered by the reporting physician herself, consistency requires the ALJ to compare the report's conclusions to the evidence offered in other sources in the record. 20 CFR 404 § 1520c(c)(2); *see also David W. v. Comm'r of Soc. Sec.*, No. 3:24-CV-00255, 2025 WL 841074, at *7 (S.D. Ohio Mar. 18, 2025) ("Here, the ALJ clearly evaluated the consistency of Dr. Swedberg's opinion by comparing his findings to other medical evidence and Plaintiff's subjective accounts of his symptoms. That is all the ALJ had to do."). This is what the ALJ did.

The ALJ first found that Dr. Twehues's conclusions were inconsistent with the state agency consultants' limitations that Plaintiff could perform short-cycle work in small group settings without mediating or supervising others, and that she should receive feedback in a "positive and constructive manner" with changes introduced in advance. (R. at 53–54 (citing R. at 104, 114)). The ALJ reasoned that these limitations suggested Plaintiff was unable to work in a competitive

11

environment, and that Dr. Twehues's exam did not comport with this conclusion "as discussed previously." (R. at 54). Here, the ALJ relied upon her earlier discussion of Plaintiff's "pleasant and cooperative" appearance, her good hygiene, and her good eye contact during Dr. Twehues's exam to demonstrate the inconsistencies with the reviewers' conclusions. (R. at 47 (citing R. at 655)).

The ALJ then found that Dr. Twehues's conclusions about Plaintiff's inability to focus and attend work due to her anxiety and depression were inconsistent "with other evidence, including counseling records and primary care treatment records that show improvement with treatment." (R. at 54; *see, e.g.*, R. at 657–58, 725–30, 743–54, 758, 869, 882). Indeed, in the year following Dr. Twehues's exam, Plaintiff demonstrated progress in counseling with feeling less depressed and anxious during the week. (R. at 727). She was also able to identify self-affirmations and "decrease negative self talk." (R. at 730). She took her medications regularly and reported feeling better about herself due to resulting weight loss. (R. at 881). Moreover, the ALJ found that Dr. Twehues's recommendation of "excessive absenteeism" was unsupported by the record, including evidence that acute stressors—as opposed to chronic anxiety and depression—caused Plaintiff to miss work at the time. (R. at 55 (citing R. at 657, 1376)). All this shows that the ALJ conducted a sufficient consistency analysis. *See David W. v. Comm'r of Soc. Sec.*, 2025 WL 841074, at *7.

Nevertheless, Plaintiff claims the ALJ failed to conduct a consistency analysis because she didn't cite any evidence that contradicts Dr. Twehues's opinion. (Doc. 8 at 10). But the record shows that the ALJ meaningfully compared Dr. Twehues's opinion with record evidence, as required by the regulations, and she thus evaluated Dr. Twehues's opinion for consistency. Plaintiff points to nothing in the ALJ's opinion to indicate otherwise. Plaintiff also claims the ALJ erred because she didn't include Dr. Twehues's absenteeism limitations in the RFC. (Doc. 8 at

12

11). But Plaintiff is incorrect in her assertion that the ALJ "in no way proved Dr. Twehues's opinion of absenteeism was unsupported and inconsistent with the record." (*Id.*). As previously stated, this is exactly what the ALJ did. *See Beckham v. Comm'r of Soc. Sec.*, No. 1:19-cv-576, 2020 WL 5035451, at *7 (S.D. Ohio Aug. 26, 2020) (holding that an ALJ "is only required to include in the residual functional capacity those limitations he finds credible and supported by the record") (quoting *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020)).

All told, the ALJ's opinion, read holistically, demonstrates that she sufficiently analyzed Dr. Twehues's opinion for consistency. *See Perkins v. Comm'r of Soc. Sec.*, No. 1:20-CV-554, 2021 WL 3722772, at *7 (S.D. Ohio Aug. 23, 2021) ("Reading the opinion as a whole, the ALJ fairly described the. . .lack of consistency for Ms. Smith's opinions. . ."). The Undersigned finds no error.

      **B.**      **State Agency Reviewers' Opinions**

Plaintiff next argues that the ALJ departed from the agency reviewers' mental limitations without enough explanation. (Doc. 8 at 11–14). Specifically, Plaintiff challenges why the ALJ adopted their opined limitations with respect to interactions with the public, but not with regard to interactions with coworkers and supervisors. (*Id.* at 12). Defendant responds that the ALJ provided sufficient reasoning for departing from the recommendation, and substantial evidence supports the ALJ's conclusion. (Doc. 9 at 14).

Janet Souder, Psy.D. evaluated Plaintiff's mental impairments as part of the initial determination on the claim on April 30, 2022. (R. at 96–106). Dr. Souder based her review on the following severe medically determinable mental impairments: Depressive, Bipolar, and Related Disorders, and Anxiety and Obsessive Compulsive Disorders. (R. at 99). Dr. Souder then provided an assessment of Plaintiff's mental residual functional capacity (MRFC). (R. at 103–

05). Dr. Souder found Plaintiff could perform routine or short-cycle work in a setting without production-line pace, could not have prolonged contact with the general public, was able to perform tasks in small groups or an isolated setting, should not have duties involving mediating or supervising others, should be given supervisory directives in a positive and constructive manner, and would be able to perform duties in an environment where job tasks are static and changes to routine are introduced with advance notice. (*Id.*).

On reconsideration, Plaintiff's claim was evaluated by Aracelis Rivera, Psy.D., who, like Dr. Souder, assessed Plaintiff's medically determinable mental impairments, considered any applicable Listings, and made findings regarding Plaintiff's MRFC. (R. at 108–16). Dr. Rivera reached the same conclusions as Dr. Souder with regard to the evaluation of the "paragraph B" criteria of the Listings and Plaintiff's MRFC. (*Id.*).

Turning to the portion of the ALJ's discussion at issue here, she evaluated Drs. Souder and Rivera's opinions as follows:

> The [ALJ] finds the state-agency psychological consultants' mental assessments unpersuasive. These found [Plaintiff] could perform routine, short cycle work, without production-line pace, work in small groups or isolated setting, no mediating or supervising others, supervisory directives should be given in a positive and constructive manner, and would require static job tasks with changes introduced with advanced notice. These findings are extreme and not consistent with the evidence. The limitations suggest an inability to work in a competitive environment, which is not consistent with mental status exams, counseling notes, or treatment history. It is also not consistent with Dr. Twehues' exam findings, as discussed previously. The consultants failed to support their conclusions with citations to the evidence. They relied heavily on Dr. Twehues' opinion, which as discussed elsewhere in this decision, is not fully persuasive and likewise overstates [Plaintiff]'s limitations in light of fairly normal mental status exams notwithstanding depression, agitation, or anxiety. Evidence after the consultants' assessments does not support their conclusions, given [Plaintiff]'s documented improvement with moods and functioning than these limits suggest. The medical experts' assessments also do not state limitations in vocationally relevant terms without further explanation or support, which renders their conclusion less persuasive (Exhibits 1A, 3A).

(R. at 53–54).

14

>  The ALJ concluded in discussing Plaintiff's mental RFC:
>
>  The [ALJ] has considered the areas of limitation found by the reviewing psychologists and Dr. Twehues and incorporated appropriate limitations into the residual functional capacity. The undersigned limits [Plaintiff] to simple instructions with reduced productivity, pace, and novelty demands. This accounts for [Plaintiff]'s low stress tolerance, irritability, agitation, and depression. The undersigned finds that [Plaintiff] is limited to no interaction with the public and only occasional interaction with coworkers and supervisors. She does not require small groups or isolated work setting, as this is extreme given that [Plaintiff] consistently presents as cooperative and interacts appropriately with providers throughout the record notwithstanding anxious, depressed, or irritable moods. For these reasons, the undersigned does not find limitations related to the nature of these interactions, e.g., no mediating or supervising, or only positive and constructive supervisory directives. The evidence does not support greater social limitations than assessed in the residual functional capacity. Likewise, the evidence does not support excessive absenteeism. She was reportedly fired from her last job due to missing work (Exhibit 9F, 14F). However, she also described significant stressors at that time, including child custody issues and limited mental health treatment at the time (Exhibit 14F/646). There is also evidence that [Plaintiff] missed work due to migraines (Exhibit 2F). However, given [Plaintiff]'s improved physical conditions, including less frequent migraines, and mental symptoms, the evidence does not support frequent absenteeism as suggested by Dr. Twehues.

(R. at 54–55).

Plaintiff says that the ALJ erred in departing from the agency reviewers' proposed social interaction limitation without sufficient explanation. (Doc. 8 at 11–14). For the following reasons, the Undersigned disagrees.

The ALJ limited Plaintiff to "no interaction with the public and only occasional interaction with coworkers and supervisors." (R. at 54). In doing so, the ALJ did not include the reviewers' proposed limitations that Plaintiff work in small groups and "should not have duties involving mediating or supervising others. Supervisory directives should be given in a positive and constructive manner." (*Id.*). In crafting the RFC, the ALJ found the reviewers' limitations unpersuasive, in part, because the limitations suggested an inability to work in a competitive environment, which the ALJ deemed inconsistent with Plaintiff's mental status exams, counseling

15

notes, and treatment history.  (R. at 53–54 (citing R. at 104, 114)); *see, e.g.*, R. at 657–58, 725–30, 743–54, 758, 869, 882).

The ALJ's findings are supported by substantial evidence.  For example, despite complaints of anxiety, depression, and irritability, Plaintiff presented as cooperative on mental status exams, had a normal mood and affect, cooperative and calm behavior, fluent and clear speech, a happy congruent affect, and normal judgment at most visits.  (*See, e.g.*, R. at 426, 445, 464, 637, 649, 656, 662, 667, 677, 687).  It is true that Dr. Twehues reported that Plaintiff appeared agitated at the consultative exam, but the ALJ noted that Plaintiff was also found to be "pleasant and cooperative," her rapport was easily established, her energy appeared good, she maintained good eye contact, and her judgment appeared intact.  (R. at 655–56).  During the exam, Plaintiff was able to accurately follow simple instructions, track the conversation, and not appear easily distracted.  (R. at 657).  Plaintiff reported she felt close with her husband, children, stepchildren, and parents.  (R. at 654).  In her function reports, Plaintiff claimed that she could follow instructions "good," could get along with authority figures "fine," had not been fired from a job because of problems getting along with other people, handled changes in routine "okay," and had no unusual behaviors or fears.  (R. at 290–91).  As for her daily activities, she took her kids to school and doctor's appointments, and she went to her own doctor's appointments.  (R. at 287–88).  Her hobbies included "playing on social media," and her social activities included visiting with family and talking through text or video chat, depending on her mood.  (R. at 289).  All this supports the ALJ's conclusion that the reviewers' limitations were too extreme.

Plaintiff challenges this analysis by arguing that the ALJ needed to explain why she rejected particular limitations.  But an ALJ is required to do so only if the ALJ first found the reviewer's opinion persuasive.  *Russell v. Comm'r of Soc. Sec.*, No. 2:23-CV-68-DCP, 2024 WL

3470850, at *6 (E.D. Tenn. July 19, 2024) ("But given that the ALJ found [the state agency reviewers'] opinions to be unpersuasive, he was not required to provide further explanation for not adopting their opined limitations."); *cf. Charlee N. A. v. Comm'r of Soc. Sec.*, No. 2:22-CV-3085, 2023 WL 312791, at *4 (S.D. Ohio Jan. 19, 2023) ("The ALJ failed to explain why he omitted this limitation that the sources he found persuasive included. This absence of explanation requires reversal and remand."), *report and recommendation adopted*, No. 2:22-CV-3085, 2023 WL 1766096 (S.D. Ohio Feb. 3, 2023). Here, the ALJ made clear that she did not find the opinions of Drs. Souder and Rivera persuasive. (R. at 53 ("The undersigned finds the state-agency psychological consultants' mental assessments unpersuasive.")). Instead, she found them "extreme and not consistent with the evidence." (*Id.*). And, as explained above, substantial evidence supports the ALJ's conclusion. Plaintiff's assignment of error is without merit.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 8) and **AFFIRM** the Commissioner's decision.

### PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: November 25, 2025        *s/ Kimberly A. Jolson*
                               KIMBERLY A. JOLSON
                               UNITED STATES MAGISTRATE JUDGE